Good morning. May it please the Court. My name is Kelly Fennerty and I, along with Leonard Feldman, represent the petitioner in this case, Mr. Ahmed Kareem Abdi. I would like to reserve four minutes for rebuttal. I'm going to start with the last issue addressed in our brief, which is Mr. Abdi's entitlement to withholding. And I'm starting here because resolution of this claim provides the relief requested by Mr. Abdi and avoids the need for this Court to address the adverse credibility issues. In order to establish withholding of removal, an applicant must show a clear probability of persecution. That is, that it is more likely than not that he will be persecuted. Did the BIA rule on withholding of persecution? It did, Your Honor. The BIA denied the withholding of removal claim and found that although Mr. Abdi had established that the Baroian clan suffered from a pattern and practice of persecution, that he had not shown individualized persecution. However, under the regulations relevant to withholding of removal, if an applicant establishes, first, that there is a pattern and practice of persecution, and, second, that he is a member of the ethnic group that suffers from that pattern and practice, then the BIA may not require a showing of individualized persecution. But do we know even that he is a member of that group but for his testimony? We do, Your Honor. In page 141 of the administrative record, the immigration judge acknowledged that the evidence in this case demonstrated that Mr. Abdi is a member of the Baroian clan. What evidence is that other than his own testimony? In the asylum application, Your Honor, the judge noted that he had submitted paperwork showing that he is a member of the Baroian clan. Furthermore, on page 141 of the administrative record, the immigration judge stated that whether or not Mr. Abdi is, in fact, a member of that clan is not at dispute in this case. Mr. Abdi established the only two elements necessary for his withholding of removal claim. The admission by the government of State Department reports that the Baroian clan suffers from a pattern and practice of persecution consisting of rapes, looting, and intimidation, and that they have, in fact, been driven out of Mogadishu. They have sustained the most brutal and sustained treatment in Somalia. And yet the BIA determined that Mr. Abdi's claim did not stand only because he had not shown individualized persecution. I guess the question I had, I read that and I felt somehow they were somehow still deciding asylum somehow. I mean, how do we know they were deciding withholding in that paragraph? Because they do say that there's a pattern of looting against the Baroians. So if he's a member of that and there is this pattern, how do we know that they were actually deciding withholding as opposed to is this a case where we have to remand it, a subject about which we might have some sensitivity these days? Your Honor, this case is like Hay v. Ashcroft's, where the Court found that credibility was the only issue in this case. The BIA here mistakenly assumed that credibility had a bearing on whether or not Mr. Abdi was entitled to withholding of removal. But in making that determination, the BIA applied the wrong legal standard. This Court need not remand because all of the evidence necessary for the determination is in the record and has, in fact, been addressed by the BIA and the IJ. Why isn't that true for an asylum claim, too? In Mr. Abdi, with respect to his eligibility for asylum claim, Mr. Abdi relied on his past persecution. However, his claim for withholding of removal always turned on his ability to show a well-founded fear of future persecution. This is most evident in his appeal to the BIA, in which in answers 1C and 1B1, he stated that he is fearful that upon return to Somalia, he will be persecuted because of his membership in the Baroian clan. Well, that can be a basis for asylum. I mean, withholding of removal is the – you don't have an easier route to withholding of removal. In fact, it's harder to get to withholding of removal save for a part that we're not talking about, which is the exercise of discretion by the Attorney General. But we routinely say if you don't get asylum, you can't get withholding of removal because the standard for that is higher. And you seem to be arguing here that, well, maybe he can't get asylum, but he can get withholding. And I guess that's where I'm lost. I don't see how you get withholding unless you've qualified in terms of risk of persecution for asylum as well. Your Honor, the government relies on Fisher v. INS for that same argument. The standard that is higher with regard to withholding of removal is the standard of persecution that is necessary to show that clear probability. Here, the conditions were never at issue. And this Court's decision in Marcos v. Gonzalez is instructive. There, the Court found that Mr. Marcos had not established past persecution and upheld the BIA's finding in that regard. This Court found, however, that he had established a well-founded fear of persecution based on his fear of return to his country due to membership in his clan. This Court made the same decision in Knisevich v. Ashcroft, where the BIA affirmed the IJ's decision that because they had not shown individualized persecution, the Knisevichs were not entitled to asylum or withholding of removal. However, this Court overturned finding that Knisevichs, under the regulations, had shown the two required pieces of evidence, one, that they were members of a Serbian town, and, two, that that Serbian town had been specifically targeted in a pattern and practice of persecution. What case is that again? That is Knisevich v. Ashcroft, and the site is 367F3rd 1206. I guess the question is, the standard on withholding of removal is more likely than not? Yes, Your Honor. And how do we know that from this disposition? The regulations provide illustration as to more likely than not, and that the element of a pattern and practice of persecution is what is required here. Because we have the State Department reports in the evidence that show that the Barowean clan is specifically ---- Let me just explain kind of what ---- you know, I hear what you're saying, but I kind of have this feeling we would be building like a deli sandwich out of the evidence, all of which may actually be the result, but that we would be building it instead of the BIA. So, in other words, we have two lines in the BIA decision, and we take the regulation, then we take what is undisputed in the record, and we sort of build it up, and then we get this package that you have so eloquently articulated. But I guess I have some concern about whether, really, that would be our problem with the appellate court. Even though you may be absolutely correct that that's the compelled conclusion, were we to remand it to the BIA? Your Honor, in answer to your question, I would point this Court to Hay v. Ashcroft, where this Court found that because credibility was the only issue in the case, which the immigration judge stated here on page 141 of the administrative record that the conditions are not at issue, it's only Mr. Abdi's credibility, that in that case remand was not necessary. Similarly, in Bandari v. INS, this Court can also look at the decision there, where again the Court found that all of the evidence necessary was in the record, and remand was not necessary. In any event, we submit that remand is not necessary here, but if this Court were to find that remand would be more appropriate to determine the withholding claim, then that is, of course, this Court's provenance. But Mr. Abdi has also established his claim for eligibility of asylum, to which I will now turn. The entire basis of the BIA's decision in this case rested on the admission of the asylum officer's report. Yet admission of that report in this case violated due process, and it should have been inadmissible. Was the due process argument made to the BIA? The due process argument was not explicitly made. However, we know from the ---- So you have an exhaustion problem. There is no exhaustion problem in this case, Your Honor. Mr. Abdi, in his brief to the I.J. and his notice of appeal to the BIA, and in his brief to the BIA, in every single instance argued that the notes should be disregarded because they were improper. This Court held in Thomas v. Gonzalez that exhaustion does not require the precise delineation of the legal claim. And here, Mr. Abdi's claim was always in substance that there was a due process violation and that admission was, in fact, improper. Do you need to go as far as saying there's a due process violation in order to see whether or not it was proper to benchmark credibility against that? No, Your Honor, we do not. And in fact, two cases are instructive there. There's Singh v. Gonzalez, a 2005 case, which we provided to this Court in opposing counsel in our 28J letter, and Singh v. INS, which is a 2002 case. In both of those cases, the Court found that ---- I may have gotten your 28J letter. When did that come in? I mean, I know the Singh case, but if you had anything that came with it, I don't think I've seen it. No, I think we just got it last night for some reason. I apologize, Your Honor. Sometimes there's a ---- I think the government sent us the Singh v. Gonzalez. And it's a case that most of the judges in our Court are going to be well familiar with, but I didn't recall seeing a letter, so I'll look for it. I apologize, Your Honor. In both of those cases, this Court found that it did not need to reach the issue of due process. However, in any case, the admission of the report was fundamentally unfair here for two reasons. One, Mr. Abdi had no opportunity to confront the witness against him. And two, the report was inherently unreliable. Sydenay v. INS speaks to the first factor in which this Court held that the government may not place the burden of confronting a witness against an alien on that alien, and the government may not shift the burden and must take the responsibility of providing a reasonable opportunity. In both Sydenay and Cunanan, the Court rejected the argument of the INS, DHS here, which is that the alien simply could have asked if he wished to cross-examine the witness. This is an impermissible burden shifting of the government's responsibility to place the author of a hearsay affidavit before the alien. Singh v. Gonzalez also addressed the requirement that in order to render a report such as that here reliable, you must place the witness before the Court and provide testimony. Yet, Singh v. Gonzalez and Singh v. INS identified a number of additional factors that are also important here. One, when the highlighted function of the quasi-prosecutorial function of the asylum officer is at play. Two, when there is no transcript.  Four, when the interview is not taken under oath. And five, when we have evidence of linguistic difficulties. All of these factors are present in this case. The government argues that the report is reliable on its face. However, this is not true. The report is not only inconsistent with all of the other evidence in the record, but it is internally inconsistent with the handwritten notes that supposedly refer to the same interview. Now the government's argument runs counter to the critical thread that runs through both Singh v. Gonzalez and Singh v. INS, which is that when this Court has no way to assess how the interview was taken and how the report was prepared, that it may not rely on that asylum officer's report standing alone as substantial evidence. Furthermore, the asylum officer and the BIA's conclusions from that report in this case both represented impermissible speculation as to what Mr. Abdi intended. This cannot substitute for substantial evidence. This is the ---- I'm not sure I understand just what you mean. Evidence as to what he intended? Let me give you an illustration. The handwritten notes of the asylum officer in this case indicate that Mr. Abdi said that they never talked to my brother and sister. In the report of the asylum officer, this statement is transformed into the fact that ---- You mean what he was trying to say? Yes. Okay. The asylum officer concludes in the report that what Mr. Abdi meant was they didn't harm my brother and my sister. Yet this statement is not evident in the handwritten notes. And for the asylum officer to substitute its conclusions about what Mr. Abdi intended when we have no way to look at a transcript of this interview and no way to know how the interview went, the asylum officer's conclusions cannot establish substantial evidence in this case. This is not a case about the admission of any asylum officer's report. This is a case about the admission of an asylum officer's report that is inconsistent and contrary to all of the other evidence in the record. Oh, is it really? I mean, much of it tracks exactly with what your client testified to at the hearing. Yes, Your Honor. However, the points that were jumped upon by the asylum officer, the IJ, and the BIA were alleged inconsistencies regarding the treatment of his brother and his sister. The handwritten notes that were taken contemporaneously with that interview do not note that Mr. Abdi stated that they were not harmed. They simply state that Mr. Abdi said, they never talked to my brother and my sister. Even if they did, you would still object to basing the decision on the asylum officer's report, wouldn't you? Yes, Your Honor, because the asylum officer report, standing alone, cannot stand as substantial evidence for the adverse credibility finding in this case. On that point, I have a procedural question that has come up on a few occasions in different cases, but one that I don't think the Ninth Circuit has actually directly addressed. As I understood the IJ's decision, it was basically he said that there was the IJ said there was inconsistency between saying all the family members were killed and just some of them were killed. But then the BIA added three more grounds, including the date and several other issues relating to the rape. Under the regulations, the new regulations, which are in effect now for Mr. Abdi's case, is the BIA permitted to make additional credibility determinations at that level? Your Honor, I cannot recall the name of the case, but there is a case in the circuit in which the BIA did just that. The alien raised an argument, and the Court held that because the alien was put on notice that his credibility was at issue, the BIA was, in fact, able to render additional credibility determinations in that case. We had that case, but that was before the new regulations. So I'm just wondering under the new regulations, the situation is different, I thought. Your Honor, that case has not come before this Court. I would submit, however, that if the BIA is supposed to ground its decision in substantial evidence and if the IJ is the arbiter of the facts, then it would seem if the IJ did not find adverse credibility in the facts, it is hard-pressed for the BIA to suddenly step in and say that facts show adverse credibility. And, in fact, we have a similar situation here where because this report stood as the entire basis of the adverse credibility decision, the asylum officer wasn't able to become the ultimate arbiter of the facts and the ultimate unreviewable arbiter of the facts. We wanted to save four minutes. You're down to three. I would like to reserve the rest of my time then, Your Honor. All right. Thank you. May it please the Court. Michael Truman on behalf of the government. Let me respond first to Petitioner's first point, that the Board made a finding on withholding of removal. There's nothing in the Board's decision that can be constituted a finding on withholding of removal. There's nowhere where they talk about the withholding standard. There's nowhere, it's just obviously not, I can't see anywhere in the decision where the withholding of removal. The paragraph says, The immigration judge denied the Respondent's application for asylum and withholding of removal finding the Respondent's claim lacks credibility. And thereafter, all the discussions about credibility. So my impression was the similar, I think, that Judge McEwen suggested. I thought they were all wrapped up together somehow. Well, and in that case, if the Petitioner has failed to meet his burden with respect to asylum, he's clearly failed to meet his burden with respect to withholding of removal. No, no, no. But the Petitioner's argument is that credibility is not relevant to withholding because of the persecution of the small group and his membership in the group. There's no evidence that he's a member of that group. The I.J. talked about that, but the I.J.'s decision is not in review here. The Board didn't adopt and affirm the I.J.'s decision. It issued a new decision. The credibility goes to whether he is a member of that group. And so since his credibility is in question, then clearly there's no withholding finding here. Petitioner's counsel. I'll just ask you the practical matter and try to figure out what would actually happen to these cases if different things happened, okay? So they do lay down the predicate for withholding, but they don't talk about meeting the more likely standard in the BIA decision. And it appears from this record that he could establish his membership, presumably. If that were the case, if it were sent back on the withholding issue and he established his membership in this tribe, would there be any other legal impediment then to granting withholding of the military? Yes, because the alien has not been found credible in this case. And his credibility goes not just to whether he's a member of that tribe, but to everything every claim he makes, every claim he makes that he was persecuted. Well, let's assume he'll be. Yeah, I was sticking to the persecution of the tribe and using that as the grounds for the claim of removal. Well. His individual persecution. It's still, I suppose that if it was remanded and the immigration judge decided that based on the record he was a member of the tribe, there's still the question of his credibility. Well, is there really? I mean, let's move to a hypothetical case. Suppose you have a group that is unquestionably persecuted in whatever country we're talking about. And there's not a dispute that the petitioner happens to be a member of that group. The fact that he may be a liar and utterly untrustworthy doesn't mean he's not a member of that group subject to persecution if sent back. So at least theoretically it seems to me you could make out a case for withholding, and for that matter for asylum, short of the Attorney General's discretion, even if the petitioner is found not to be credible as to other subjects. Now, I'm not saying that we're at that point now, but at least theoretically. I don't know why credibility is taken. It's not part of the statute. You don't have to have a finding that the applicant is credible. Well, the petitioner has the burden to prove that he's credible. That's my point. What in the statute says he's obligated to prove credibility? I guess that's in the regulations. Well, you see, if he establishes persecution and there's not a dispute as to his tribe or his connection, it seems to me the fact that he's a liar really doesn't matter because he's still subject to persecution, and that factual finding could be made based on other evidence. Yeah. I guess it would go to exactly, yeah, it would go to whether he is a member of that tribe. That would have to be further developed if that was really the issue in this case. If that were not an issue, there's nothing in the – this is where they were just talking across each other, but there's nothing in the withholding and removal statute that would require a credibility finding and that requires that you have a credibility finding if you have the circumstances posited by Judge Clifton. Is there? Well, the withholding regulations say that the evidence that the petitioner presents is deemed sufficient if it's – his testimony is deemed sufficient if it's credible. That's assuming that it's stipulation, that the person A is a member of a tribe and the tribe is persecuted. Is that enough for automatic granting and withholding? Yeah. Under the regulation, under the plain language of the regulation, yeah. But they'd have to go back in this case, for example. They'd definitely have to go back and further develop that issue. Well, let's assume that, again, hypothetically, the issue on appeal here is credibility. Let's assume we were to reverse on that issue on credibility and find credibility. And find him credible? Yeah. Which is – that's what we do on the asylum claim normally. We'd send it back for all of the other issues. Now, in the withholding claim, it seems to me logically from what you're saying that if we were to find him credible, then there's nothing left for the BIA to do. It's an automatic grant, you say, of withholding if he's credible. All right. Well, I would still dispute that there's not a withholding determination made by the Board in this case. The Board – Is there anything to – what would they have to determine? Have they determined that he's a member of – assuming he's credible. Right. That the tribe is a tribe that is – someone who is a member of that tribe is entitled to withholding.  And the Board didn't do that in this case. The I.J. did, but I.J.'s decision is not in review. Just the Board's decision. Let me ask you on that point a question that I pose to Ms. Fennerty. And that is under these new 2002 regulations, they essentially say the Board isn't to engage in de novo fact-finding. And then they go on to say that facts that are determined by the immigration judge, such as credibility, are used and then you make a determination as to whether they're erroneous or not. My question is whether under that regulation, if the BIA didn't make a credibility finding on a particular point, what permits the BIA to make credibility findings? You have to tell me exactly what the regulation is saying, because it seems to me that – Here's what the regulation says. Okay. I mean, it's the one you all operate under. It's the Board shall not – will not engage in de novo review of findings of fact determined by an immigration judge. Facts determined by an immigration judge, including findings as to the credibility of testimony, shall be reviewed only to determine whether the findings of the immigration judge are clearly erroneous. So if the immigration judge didn't make a finding, and we have this funny thing in this case where the immigration judge made one finding about all the relatives and we certainly wouldn't need to deal with that because the BIA dealt with that directly in its decision. But then it added three more points. And my question is, is that a legitimate invocation of authority for the BIA to do that, or do we simply not deal with those three additional points? Well, I believe in this case the immigration judge did make – did comment on the other inconsistencies with respect to the family members and the dates and all that. So in this case, I think the Board, when it went through, it outlined inconsistencies. I don't think it was doing something that I.J. hadn't considered or done. Whether the Board has authority to do that, I didn't prepare for that in my brief. I can submit supplemental authority if that's what the Court would like. I'm sorry. If I could go back to my question. You say that the BIA did not find that this is a group that's been singled out for persecution? Right. Well, the BIA said, we acknowledge that the evidence shows that the Berwawans as a group in general have been singled out for harassment, and those living in the old quarter of Mogadishu have been driven out of the country. Then it gives a say. The evidence demonstrates that there have been reports of a consistent pattern of looting, rapes, and intimidation by the succession of militias against the Berwawans. However, this evidence does not support a finding that the Respondent has been persecuted individually. It certainly seems to say the group has been persecuted. Right. It does say the group has been persecuted. But when he says, however, this evidence does not support a finding that the Respondent has been persecuted individually, he's clearly making a determination with respect to asylum in that case.  Right. And so I don't think that It's sort of a puzzle, isn't it? Because the standard for asylum is lower. Whether it's really 1 in 10 or not, I won't try to get into. But if given the broad statements that the Board appears to acknowledge and accept, it's hard to believe that anybody who's part of this tribe, whether he's been the victim or his family has been the victim in the past or not, it's hard to believe that anybody isn't facing a substantial risk of sent back. I mean, and let me jump ahead. Are we sending anybody back to Somalia these days? My impression is we're not. Yes, we are. The national injunction was vacated just last week by the Court here in Seattle. So he's at risk of going back, but can anybody say at this point that he doesn't face a well-found area of persecution? Well, that's an interesting point in this case, because the Board moved in 2002 to administratively close the case and to give him a chance to apply for temporary protected status. But he opposed that, and he went ahead with his appeal. And so obviously – and there's been people in this case, in this situation, that have opposed the national injunction and have been removed to Somalia. Well, now, when you say that you're sending people back to Somalia, you're not sending Berowans back to Somalia, are you? I don't know that at all, for sure. You're just saying that the blanket injunction is lifted. The blanket injunction was vacated as of last Wednesday. Well, then let's go back to the question we were facing. Based on the broad statements made by the Board, how can it not be the case that somebody who's a member of this tribe has a basis under our legal standard for saying he's got a well-founded area of persecution to send back? Well, again, I think that goes to, first, the fact that that question of whether he's been – is a member of this tribe is not decided by the Board. So that's not part of the withholding determination. That's required to make such a withholding determination. The Board didn't do that. Secondly, it does go to credibility, because the Petitioner has the burden of proving a credible claim of persecution. Now, I realize we've been through the discussion that that somehow can be avoided of being credible, but I don't think that's a very reasonable result that someone that gets on the stand, gives wildly different stories, totally inconsistent. But that – let's assume, though, that we made a finding the credibility of determination is not supported by evidence. Let's assume. That's the basic issue here today. Let's assume you were to lose on the basic issue. That would then, ordinarily, if we remand on an asylum claim, then you have to take the – treat his story as credible. All right. Now, let's assume we're at that point, just to explore where all this leads us. If we were to reach that decision, that the credibility finding is not supported, meaning that you would be required to treat him as credible, then, if you apply that to the Board's finding, take that and the Board's finding as to Berwawan's, is he not then automatically entitled to withholding? No, he's not, because the Board did not make a determination that he's a member of that tribe. But once we find he's credible, and the Board has to take his testimony as credible. Right. Well, what is there for the Board to do? Well, I think that it should be remanded for the Board to make that decision. What decision? The decision on whether he's credible? No. The Board should have the first chance of deciding whether he's a member of that tribe. But if we've determined that his evidence is credible, that there's no – nothing for the Board to say on that, other than that he's a member of the tribe. I mean, theoretically, I see what you're trying to say. Although, usually, when there's an adverse credibility determination that isn't sustained by our court, it goes back with instructions to treat him as credible. Right. And given that the government didn't try to make a contest of that issue, it's really hard to see if there's anything left seriously to accomplish on a version of that. Yeah.  I see your point. I won't butt heads with you on this. I think – I see what you're saying. And I think that – I still think that the Board should make that decision in the first instance. It may be simply a matter of – Well, there's another court that seems to share your impression that we should be careful about that. But I have trouble looking at this case and figuring out exactly what it is that's left over, starting with the premise. Right. And I understand you're contesting it. But when we start with the premise that the adverse credibility decision can't be sustained, then what – then all that's left, as I see it, if it's asylum, the Attorney General's discretion is always left. If it's withholding a removal, that's not there. So the only question that I could imagine would be whether what the BIA has said is enough for more likely than not, which is a pretty tough standard. And I suppose an argument could be made, but I guess I'm not sure it's worth anybody's while to – Right. – spend much time making. Well, maybe I can talk now about the credibility determination, if that's all right. The only question is, I mean, asylum, and there is actually – there are actually other things that the board could do that they haven't reached. You know, does all of this together constitute persecution of the individual? On the other, you know, I think we are all concerned with two things. Assuming credibility. And we'll give you an extra couple of minutes. Assuming credibility, even if the issues are somewhat theoretical, the Supreme Court thinks it's advantageous to send them back to the board. And, you know, if there is a legitimate reason for the board to act further, I think we would send it back. You know, maybe you want to think over before you give us a final answer, because there's not – in the asylum cases, generally the board stops short. They say he's not credible, and therefore they don't decide the other issues. Here, if he is credible, there really isn't anything left to send it back for, because of the fact that the board went ahead and made the other finding that the group as a group is in danger. Now, I frankly can't see what the board would do with the withholding issue. If we sent it back and said he is credible, he is a member of the tribe, then it would seem, and I think we're all pretty much in agreement, they would just have to say, yes, you're entitled to withhold it. Yeah. The other thing I can – sorry. Are you finished? Yeah, go ahead. I was going to say, if you – well, go ahead. The other thing I'm thinking of is there might be a question of the lapse of time between 1996 and 2006, what's happened in the country conditions. Obviously, there's still temporary protected status. It's still a problem. Whether the borrowed lands still have a problem. And maybe that's something that the province of the board and the immigration judges consider those things first, given the lapse of time that's happened in this case. But I think there would be reason at least there to remand it to the agency to make that determination. All right. Well, then why don't you have to expect credibility then? Okay. The difference between the statement between the asylum officer and the statement at the immigration hearing go to the very heart of the claim. And the statement particularly with respect to whether his brother was killed and whether his sister was raped and killed. Those are the kind of things that someone's not likely to forget, someone's not likely to get mixed up, you know, 7 years or 10 years or however many years down the road. The main issue would seem to be Singh v. Gonsalves. Right. Yes. And you've said you don't think it applies here. You said in your 28J letter. Well, I don't think the – I guess in the 28J letter what I meant to say was that the facts are distinguishable in this case. In Singh, the concerns in Singh, there was a lot of concerns that don't apply here. For example, one of the concerns was that the Petitioner didn't receive the assessment to refer until he was at the immigration judge hearing. Here, it was served on him a month before the hearing. He knew full well that the evidence of the asylum officer notes, all these things were going to be admitted. He never challenged it. I think that's very significant. He never objected to it, the July 10th master calendar hearing. He knew that his credibility was going to be in question. He knew that the immigration judge was going to use those documents. He never objected to their disability. When he got to the hearing, the immigration judge admitted all the documents at the beginning of the hearing, and he asked Petitioner's counsel whether he had any issues to raise before the testimony of the witness, and Petitioner's counsel didn't object. He didn't object to any of the documents. But isn't there a difference between the document coming in and being accorded whatever weight and appropriate consideration it might be given versus whether it may be the sole basis for an adverse credibility finding? Could you just address that distinction? Yeah. Yeah. Okay. Let me keep going on the Singh factors. Another concern of Singh was that there was no evidence that there was an interpreter in the asylum officer interview. Here, we clearly had an interpreter. The interpreter signed a statement saying that he translated everything correctly, that he understood each other. We have the testimony of the Petitioner, but the interpreter translated things in English and Somali. Another factor in Singh is the Petitioner during the immigration judge hearing was never given an opportunity to explain the inconsistencies. Now, when you say in Singh there was no interpreter? There was no evidence of an interpreter. That was one of the factors. Does that make it better or worse? Well. I mean, it seems to me if there's no interpreter and there's no language problem, that's it. Well, but there was a language. There was evidence of a language problem, and there was no interpreter in Singh. Well, I assume there was no interpreter because one wasn't necessary. Well, no. In Singh, he was he had trouble communicating with the immigration officer. And because there was no interpreter present, that was kind of prejudicial against him, against the government. But it's his obligation to bring the interpreter, right? Well, yes, it is. It's his obligation. I see my time's up. Well, if you can have another couple of minutes. Okay. And I think that's you bring up a very important point. Petitioner challenges sort of the weight of the asylum officer's evidence because of an alleged interpreter problem. But here there really isn't evidence of an interpreter problem. They have the claims that there's an interpreter problem, but it's the petitioner's burden under 1208.9g to bring a competent interpreter. And the burden is such that if he doesn't bring a competent interpreter, he's a judge as if he didn't even appear for the asylum officer. By the way, it says to me in Singh, it says a court-provided translator interpreted Singh's removal hearing conducted in Punjabi. Right. But that's the court. That's the court, the IJ's hearing in the Singh case. This is the asylum officer hearing. Oh, I see. Yeah. Okay. So you're saying at the AO's hearing, in Singh, it doesn't state whether there was an interpreter.  There's no evidence of an interpreter. Here you have an interpreter that translated for him. And with respect to the interpreter, clearly the interpreter was translating what was being said. The interpreter could translate or convey that his uncles were killed, presumably, you know, allegedly, that his niece was raped, allegedly. Why couldn't he convey, if he had been told, that the brother had been killed and that the sister had been raped? I mean, obviously he was interpreting this information. If he had been told that by the petitioner, he would have been able to convey it. I think the claim that the proceedings are somehow prejudiced because of the interpreter is simply unfounded. Another Singh factor is that there was no transcript of contemporaneous notes. There was no transcript of what happened in the asylum officer's interview. Here we have the handwritten notes of the asylum officer, the questions and answers. In Singh, the Court said they were concerned because all the petitioner received was just this conclusion that he wasn't credible. Well, the notes here didn't say question and then give the question and answer and give the answer, did they? I guess that is notes of what? The notes write out the question and then write out the answer. Petitioner's counsel said that the notes don't mention that the sister wasn't raped. The notes clearly mention that the sister wasn't raped. This is on page 200 of the record. I mean, it says not raped, and it's even underlined in the record that the sister wasn't raped. So this consistency is very dramatic, and it's there present in the asylum officer's interview, detailed, handwritten notes, line by line, what was the question and answer give and take in the record. So I would. What page is that where the note says sister not raped? Excuse me? The page of the record where you were referring to. 200?  Yeah. About the middle of the page. Yeah. It says that they thought they might have attempted to rape the sister, but she was not raped, and not is underlined. It's clearly in the handwritten contemporaneous notes. And that was one of the factors in seeing which diminished the credibility of the asylum officer's interview, because there was no contemporaneous written notes. And here we have that. So I think that the same, really, the main concerns in seeing weren't existent  There was no oath in seeing. There was no oath given here. But that's not required by the regulation. And so I would suggest that the same, that the asylum officer's notes are admissible. They constitute substantial evidence that goes to the very heart of Petitioner's claim. If there aren't any more questions, I'll sit down. Thank you. Thank you, Your Honors. First, I would just like to read part of the administrative record. This is at page 2. The BIA acknowledged that it deferred to the IJ's factual findings. We find that the IJ's adverse credibility finding is supported by the record. And I would like to direct the Court's attention to the administrative   findings. This is at page 2. Page 141 of the administrative record, lines 16 to 18. But are we disputing here that he is a member of that clan? The IJ's answer, no. Secondly, I would like to correct two things that were just attributed by opposing counsel. First, that the interpreter in Sing was in the immigration hearing, not before the asylum officer. Page 1088 of Sing indicates that there was no interpreter, in fact, before the asylum officer, not the immigration judge, as he stated. Second, I never said that the notes stated that she was not raped. I was clarifying that the handwritten notes never say anything that she was not killed. They only say they never talked to my sister. And yet, in the report of the asylum officer, we have his conclusion that what Mr. Abdi intended was that she was not harmed. This fact does not appear in the handwritten notes. Judge McKeown, to your question regarding the BIA's credibility determination here, that added more answers. If we look at the inconsistency that is at the heart of this case, identified by both the IJ and the BIA, it was who were the survivors of this attack by the Hauwea clan. If we look at the BIA's decision, it shows that the BIA was not grounding its decision in substantial evidence. First, it stated that Mr. Abdi said in the asylum officer report that his uncle was not harmed. Yet, if we look at both the handwritten notes and the officer's report, both note that Mr. Abdi said that two uncles were, in fact, killed. The BIA here failed to even cite the record correctly, and it cannot be said that it was grounding its decision in substantial evidence. Secondly, with respect to both the brother and the sister, the handwritten notes never indicate, and as Judge Reinhart noted, there is no clear layout of questions and answers, nor a transcript. And yet, the asylum officer concludes, based on Mr. Abdi's statement, that they never talked to them, meaning his brother and sister, that Mr. Abdi meant that they were not harmed. The asylum officer's report is not reliable and cannot serve as the only basis of the adverse credibility determination in this case. Mr. Abdi has established that he is entitled to withholding of removal, and we ask this Court to grant that. He has to be grounded. Ginsburg. If we were to determine that he is credible, but for whatever reason we couldn't at this level grant the withholding and it needed to be remanded for a ministerial determination, is there any – is there anything else that the BIA would need to determine other than the more likely and the tribe issue, which is not disputed? Your Honor, I would direct you to page 142 of the administrative record where the conditions here, it's only the credibility in this case. Because credibility was the only issue in this case, this case is unique, and I see I'm out of time. We'll give you an extra minute or two. Thank you. There is nothing else to be determined as to Mr. Abdi's withholding claim or his asylum claim. And thus, this Court – But an asylum claim, they didn't reach the question of whether this constituted persecution. It may be fairly apparent. You know, normally they have two or three determinations, and they – even if it's evident to us, they have to make them. Once you – all they've said is he's not credible. They didn't say if he is credible, he's entitled to asylum. Your Honor, I would refer the Court to both the BIA and the IJ's decision and – decisions, excuse me – in which both expressly acknowledged the persecution of the Baruian clan, and again, that the IJ expressly said the conditions of this case are not at issue. It's just a matter of credibility. Well, I can't say your argument doesn't have a great deal of logic to it. I can say it might run into a problem with some Supreme Court decisions. That's – unfortunately, we are required to follow Supreme Court decisions, not logic or reason. Your Honor, it's this Court – it is this Court's providence to decide whether remand on the merits or remand just for the administrative of the AG's determination is appropriate. We would submit their opinion. If you could give us a Supreme Court case that says it's okay to – not to remand under Ventura under these circumstances, that would be extremely helpful. I can give you a Ninth Circuit case. Hey, the astronauts. Oh, we've got a lot of Ninth Circuit cases. They just didn't make their way up. Thank you, Your Honors. Case just argued is submitted.
judges: Reinhardt, McKeown, Clifton